UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

RUFINO CARDONA and NILDA CARDONA,

                Plaintiffs,

       v.

COMMUNITY ACCESS, INC. and CARL
JOHNSON,

                Defendants.

------------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 2 5 2013 ★

BROOKLYN OFFICE

**MEMORANDUM & ORDER**
11-CV-4129 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiffs Rufino Cardona and Nilda Cardona bring the above-captioned action against Defendants Community Access, Inc. ("Community Access") and Carl Johnson. Plaintiffs allege that Defendants engaged in discriminatory practices in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (the "FHA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* (the "Rehabilitation Act"). Plaintiffs also assert claims for invasion of privacy, intentional infliction of emotional distress, fraudulent concealment, discrimination, negligence, assault and battery, and conspiracy, all under New York law. In addition, Plaintiffs purport to bring a claim for violation of the Privacy Act of 1974, 5 U.S.C. § 552a. Defendants moved for summary judgment. Plaintiffs seek sanctions based on the theory that Defendants' summary judgment motion is frivolous. For the reasons set forth below, the Court grants Defendants' motion for summary judgment and denies Plaintiffs' motion for sanctions.

## I.   Background

Plaintiffs are a couple currently residing in a building owned and operated by Defendant Community Access. (Am. Compl. ¶ 4.) Defendant Community Access is a not-for-profit organization "concentrating in the field of supportive housing and peer employment training programs for New Yorkers who live with a psychiatric disability." (Def. 56.1 ¶ 2.) Defendant Carl Johnson is an employee of Community Access.[1] (*Id.*)

As a factual basis for all of their claims, Plaintiffs allege that (1) they have been denied "their right to have guest [sic] visit without signing a log book at the receptionist desk, yet permitting non-Hispanic, non-disabled and gay guest [sic] of other tenants to forego sign-in and freely enter;" (2) "Plaintiffs are not permitted to have the receptionist's electric door buzzed open for Hispanics tenants;" (3) Plaintiff Rufino Cardona was assaulted by Defendant Johnson and "non-Hispanic tenants are not physically abused;" (4) "In hopes of outstintg [sic] the plaintiffs from the apartments, defendants, upon information and belief, has [sic] employed gay and/or homosexual non-Hispanics to engage in a systematic scheme of harassment, and abuses directed towards the plaintiffs. Furthermore, upon information and belief, defendant hires employees who are directly members of or the employees of defendant [to] assist illicit drug dealers in the dwelling." (Am. Compl. ¶ 8.) Plaintiffs claim that all of the events "have existed since the plaintiffs lst filing before the court in *Cardona, etal* [sic] *vs. Community Access, Inc., etal* [sic],[] docket no. 90-CV-3148 (CBA-RLM) (EDNY, 10/29/2009) and up to the current time, and hasn't ceased." (*Id.*)

---

[1] The Complaint initially named Defendant Johnson and another Community Access employee Lesha Battle, sued as "Jane" Battle (who is now deceased). (Compl. ¶¶ 4–6.) However, in the Amended Complaint, Defendant Johnson is the only Community Access employee named as a defendant. (Am. Compl. ¶¶ 3–5.)

This is Plaintiffs' second suit alleging similar facts.  On July 13, 2009, Plaintiffs filed suit against Defendant Community Access and another entity (the "2009 Litigation").  (Def. 56.1 ¶ 3.)  In the 2009 Litigation, Plaintiffs alleged that they were not allowed to live together as husband and wife and that Defendants "(1) forced plaintiffs, both tenants, to sign logbooks [sic] entering their building, (2) made plaintiffs [sic] guests to leave the building without rational reasons; (3) neglected, failed or refused to alert plaintiffs of the presence of guests attempt at visiting; [and] (4) made direct indirect threats against the plaintiffs."  (Weissman Decl. Ex. C (2009 Compl. ¶ 1).)

After two settlement conferences, on October 29, 2009, the parties filed a Stipulation of Settlement with a Confidential Release (collectively the "Settlement Agreement").  The Confidential Release was incorporated by reference into the Stipulation of Settlement and released the named defendants and various individuals associated with the named defendants including their employees from "any and all existing or possible" claims arising from their tenancies at buildings run by Defendant Community Access.  (No. 09-CV-3148 Docket Entry No. 24; Weissman Decl. Ex. E (Stipulation of Settlement and Confidential Release).)  The Settlement Agreement dismissed the 2009 Litigation with prejudice.  (Weissman Decl. Ex. F.) On October 30, 2009, United States District Judge Carol Bagley Amon entered an order dismissing the case in light of the settlement.  (No. 09-CV-3148 Docket Entry No. 25.)

## II.  Discussion

### a.  Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of*

*Parole*, 678 F.3d 166, 174 (2d Cir. 2012); *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (alteration in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))); *Thompson v. Tom Vazquez Janitorial*, No. 05-CV-808, 2006 WL 3422664, at *2 (E.D.N.Y. Nov. 28, 2006) (noting that a court "must construe the *pro se* plaintiff's claims liberally in deciding the motion for summary judgment" (citing *Sawyer v. Am. Fed'n of Gov't Emps., AFL-CIO*, 180 F.3d 31, 36 (2d Cir. 1999))) "This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

4

### b. FHA Claim

Plaintiffs bring a FHA claim against the Defendants.[2]  Plaintiffs argue that they were treated differently than non-Hispanic, non-disabled, homosexual individuals.  (Am. Compl ¶ 8.) For example, their guests had to sign the guest book and Plaintiffs' guests were not buzzed into the building.  (*Id.*)  Defendants argue that Plaintiffs' FHA claims are precluded by the Settlement Agreement from the 2009 Litigation.  Defendants are correct.  Under New York law, res judicata bars a plaintiff from bringing "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'"  *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 277 (E.D.N.Y. 2009) (quoting *Burka v. N.Y.C. Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994)).  Because the Plaintiffs' FHA claims arise from facts that pre-dated the Settlement Agreement, Plaintiffs are precluded from bringing this claim.

"A dismissal with prejudice is *res judicata* not only as to the matters actually litigated in the previous action, 'but as to all relevant issues which could have been but were not raised and litigated in the suit.'"  *Samuels v. N. Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991) (citations omitted); *see also Reyes*, 661 F. Supp. 2d at 277 (noting that "New York courts apply a transactional analysis of *res judicata*" meaning that all claims that arise out of "the same factual grouping" as an earlier decided claim is barred (quoting *Burka*, 32 F.3d at 657)); *Res. N.E. of Long Island, Inc. v. Town of Babylon*, 28 F. Supp. 2d 786, 792 (E.D.N.Y. 1998) ("[O]nce a claim is brought to its final conclusion, all other claims arising out of the same transaction or series of

---

[2] The FHA "prohibits discrimination in the housing market based on, inter alia, race, color, religion, sex, national origin, or disability."  *United States v. Space Hunters, Inc.*, 429 F.3d 416, 419 (2d Cir. 2005).

transactions are barred, even if the latter are based on different theories, seek different remedies, or allege different facts.").

Settlement agreements entered as stipulations of dismissals with prejudice preclude all claims that could have been brought at the time of the settlement. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286–87 (2d Cir. 2002) ("It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes."); *Muhammad v. City of Peekskill*, No. 06-CV-1899, 2008 WL 4452355, at *4 (S.D.N.Y. Sept. 30, 2008) ("'The stipulation dismissing plaintiff's 'action' with prejudice must be read to have dismissed all claims,' which precludes Plaintiff later raising 'those claims that would have been decided had the first action been fully litigated.'" (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)); *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) ("[A] stipulation of dismissal with prejudice is considered a final judgment on the merits for purposes of *res judicata*, as is a settlement agreement, unless the parties provide otherwise.").

The settlement would preclude not only claims against the named defendants in the prior action, but also those in privity with the named defendants. *Muhammad*, 2008 WL 4452355, at *4–5 ("Plaintiff is barred from making claims against the same party and those in privity with that party." (citing *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367–68 (2d Cir. 1995)). Therefore, the Settlement Agreement would prevent claims against Defendant Johnson as well as Defendant Community Access.

"Settlement agreements are strongly favored . . . and may not be lightly cast aside. Afterthought or change of mind are not sufficient to justify rejecting a settlement. A court may relieve a party of the consequences of a settlement agreement '[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident . . . .'" *Willgerodt*

6

*on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560

(S.D.N.Y. 1997) (alteration in original) (citations omitted); *see also Powell v. Omnicom*, 497

F.3d 124, 129 (2d Cir. 2007) ("Consequently, a 'voluntary, clear, explicit, and unqualified

stipulation of dismissal entered into by the parties in court and on the record is enforceable even

if the agreement is never reduced to writing, signed, or filed.' The settlement remains binding

even if a party has a change of heart between the time he agreed to the settlement and the time

those terms are reduced to writing." (citations omitted)); *Collick v. United States*, 552 F. Supp.

2d 349, 352 (E.D.N.Y. 2008) ("Settlement agreements to end litigation are strongly favored by

courts and are not lightly cast aside. Once reached by the parties, settlement agreements are

binding and enforceable."). Further, "[a] district court has the power to enforce summarily, on

motion, a settlement agreement reached in a case that was pending before it." *Collick*, 552 F.

Supp. 2d at 352.

      Plaintiffs signed the Settlement Agreement from the 2009 Litigation. As part of the

Settlement Agreement, Plaintiffs released Defendants from liability from all claims related to the

2009 Litigation.[3] In their response papers, Plaintiffs argue that the Settlement Agreement is not

---

[3] The validity of releases for actions in federal court is governed by federal common law; however, federal courts rely on state law to help determine the contents of federal common law. *Twine v. Four Unknown N.Y. Police Officers*, No. 10-CV-6622, 2012 WL 6184014, at *7 (S.D.N.Y. Dec. 12, 2012) (citing *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993)). As with settlement agreements in general, releases are given considerable deference and are not lightly repudiated. *Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189 (S.D.N.Y. 2008) ("New York law also recognizes that "a clear and unambiguous release . . . should be enforced according to its terms." (internal quotation marks omitted) (quoting *Krumme v. WestPoint Delaware*, 92 N.Y.2d 934, 935 (1998)); *Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 603 (S.D.N.Y. 2004) ("By its terms, the Release is governed by New York law, and New York law favors the enforcement of valid releases: An unambiguous release should be enforced according to its terms." (internal quotation marks omitted) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 144 (2d Cir. 2000)); *Thailer v. LaRocca*, 571 N.Y.S.2d 569, 571 (App. Div. 1991) ("The general rule is that 'a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private

binding because they did not have the legal capacity to negotiate due to their incompetence. (Pl. Opp'n App. (part I) at 2.).  In order to overturn the validity of the Settlement Agreement, Plaintiffs must demonstrate that they had an incapacitating disability at the time they entered into the Settlement Agreement and that Defendants knew of their disability. *See Reid v. IBM Corp.*, No. 95-CV-1755, 1997 WL 357969, at *7 (S.D.N.Y. June 26, 1997) ("[F]or the Release to be voidable, plaintiff must demonstrate both the incapacitating disability and that defendant had reason to know of this disability.").  "The party asserting incompetence must prove that status at the time of the disputed transaction, . . . an extremely heavy [burden]." *Reid*, 1997 WL 357969, at *7–8 (citations omitted); *see also Colburn Family Found. v. Chabad's Children of Chernobyl*, 739 F. Supp. 2d 614, 618–19 (S.D.N.Y. 2010) ("A party seeking to void a contract bears the burden of proving that the contract is invalid."); *Rudolf Nureyev Dance Found. v. Noureeva-Francois*, 7 F. Supp. 2d 402, 415 (S.D.N.Y. 1998) ("Parties are presumed to be competent, and a party asserting incapacity has the burden of proving incompetence.").  Furthermore, "[i]f the releasing party does not promptly repudiate the contract or release, he will be deemed to have ratified it." *Colburn Family Found.*, 739 F. Supp. 2d at 618–19.

The only evidence presented by Plaintiffs supporting their claim of incompetence is two letters from their physician dated June 12, 2012.  Both letters state that Plaintiffs have been "diagnosed with 300.02 [g]eneralized anxiety disorder," are taking medication, and are "totally disabled and unable to work/receiving SSI benefits for disability." (Pl. Opp'n App. (part III) at 1.)  The letters state that Plaintiff Nilda Cardona has been the doctor's patient since January 2010

---

agreement between parties.'"); *see also Watson v. City of New York*, No. 11-CV-00335, 2012 WL 6005781, at *1–4 (E.D.N.Y. Dec. 3, 2012) (adopting report and recommendation enforcing settlement agreement which included a release of "all civil rights actions from the beginning of the world to present"). "[T]he meaning and scope of a release are determined within the context of the controversy being settled[.]" *Glassberg v. Lee*, 918 N.Y.S.2d 554, 555 (App. Div. 2011).

and Plaintiff Ruffino Cardona has been the doctor's patient since March of 2010; however, the letters do not address when Plaintiffs began to suffer from anxiety. (*Id.*) Plaintiffs' assertion that they suffer from anxiety is not enough to demonstrate that they suffered from a condition that was debilitating enough to prevent them from entering into the Settlement Agreement in October 2009. *See, e.g., Lang v. Tewksbury Twp.*, No. 10-CV-2564, 2012 WL 503677, at *6 (D.N.J. Feb. 15, 2012) ("While the Court does not doubt that Defendant suffers from serious and debilitating mental conditions . . . the record does not support a finding that he was unable to understand the terms of the settlement agreement to which he voluntarily agreed . . . ."); *Eddie v. Auto Truck Transp. Corp.*, No. 06-CV-0750, 2007 WL 1874225, at *6 (W.D. Va. June 27, 2007) (holding that a generalized statement that a party suffered from "'severe anxiety and depression,' and stating that she was not in 'any mental state' to enter into a contract . . . did not show that an agreement should be set aside"); *Rudolf Nureyev Dance Found.*, 7 F. Supp. 2d at 416 ("When attempting to deem a party incompetent, it is not sufficient to show a general lack of capacity; it must be shown that the person was incompetent at the time of the transaction. [For example,] 'persons suffering from a disease such as Alzheimer's are not presumed incompetent and may execute a valid deed.'" (citation omitted)); *Savoie v. Terrebonne Parish Sch. Bd.*, No. 98-CV-1006, 2000 WL 136008, at *5 (E.D. La. Feb. 4, 2000) (holding that the plaintiff's "letters from several doctors setting forth that [plaintiff] was suffering from depression, anxiety, and stress" which plaintiff argued hindered her ability to "consent in entering into the Settlement Agreement" were insufficient to convince the court "that a material issue of fact exists on this point"); *Reid.*, 1997 WL 357969, at *7–8 ("Plaintiff has failed to present evidence sufficient to demonstrate that he had a mental disability when he entered the Release, or that that disability impaired his ability to act in a reasonable manner. . . . [because] '[m]ere evidence of diagnostic

9

labels without content tying them to capacity to give valid consent is inadequate to create an issue as to the consequences of the disorders on an individual's capacity to give valid consent.'"); *Willgerodt*, 953 F. Supp. at 560 ("There is no evidence, however, that [plaintiff]'s depression caused her to lack contractual capacity or that her agreement was the result of impulsive or irrational behavior beyond her control. . . . Treating depression as a basis for avoiding a contract would undermine '[t]he fundamental integrity and reliability of contracts.'" (alteration in original) (citation omitted)).[4]

Thus, the letters presented by Plaintiffs are insufficient to repudiate the Settlement Agreement and Plaintiffs are bound by the Settlement Agreement. According to the terms of the Settlement Agreement and under res judicata, Plaintiffs are precluded from litigating all claims that arise from the same set of facts that gave rise to the 2009 Litigation. (Weissman Decl. Ex. E.) Precluded allegations include Plaintiffs' contentions that they have been denied "their right to have guest visit without signing a log book at the receptionist desk, yet permitting no-

---

[4] Plaintiffs allege that because they were incompetent they should have had an attorney appointed in the 2009 Litigation. (Pl. Opp. App. (part I) at 23.) As an initial matter, even if it could be argued that the June 12, 2012 letters establish that Plaintiffs are currently incompetent, they fail to demonstrate that Plaintiffs were incompetent in 2009 when they signed the Settlement Agreement. (Pl. Opp. App. (part III) at 1–2.) The letters do not speak to Plaintiffs' competence in 2009. (*Id.*) Moreover, there is no right to counsel in a civil case. *Martin Trigona v. Lavien*, 737 F.2d 1254, 1260 (2d Cir. 1984). A court cannot compel an attorney to take a civil case without a fee, *Mallard v. U.S. District Court*, 490 U.S. 296, 310 (1989), but it may "request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1). In deciding whether to grant a request for counsel, the Court must first consider whether the plaintiff has met "a threshold showing of some likelihood of merit." *Johnston v. Genessee Cnty. Sheriff Maha*, 606 F.3d 39, 41 (2d Cir. 2010) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir 1989)). If the Court finds that the plaintiff has met the threshold requirement, the Court should next consider "the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented . . . , the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Johnston*, 606 F.3d at 42 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986)). There is no evidence in the record that Plaintiffs met these threshold requirements and should have been appointed counsel.

10

Hispanic, non-disabled and gay guest of other tenants to forego sign-in and freely enter[;]" and that "Plaintiffs are not permitted to have the receptionist's electric door buzzed open for Hispanics tenants[.]" (Am. Compl. ¶ 8.) These claims were explicitly presented in the 2009 Litigation, which Plaintiffs settled. Plaintiffs are also precluded from pursuing their claims that "defendants, upon information and belief, has [sic] employed gay and/or homosexual non-Hispanics to engage in a systematic scheme of harassment, and abuses directed towards the plaintiffs" and that there were drug dealers on the property. (*Id.*) According to Plaintiffs, these claims predated the 2009 Litigation; thus, they could have been brought in the 2009 Litigation. *See, e.g. Muhammad*, 2008 WL 4452355, at *4–5 (holding that the plaintiff was barred by the settlement agreement and release from bringing not only claims raised but also any claims that "could have been brought" in the first action); *Berrios v. State Univ. of N.Y. at Stony Brook*, 518 F. Supp. 2d 409, 420 (E.D.N.Y. 2007) ("Res judicata bars any claim that could have been raised prior to the Release date."). Viewing the facts in the light most favorable to Plaintiffs, Plaintiffs' FHA claims are encompassed in the 2009 Litigation and barred by the Settlement Agreement. Therefore, the Court grants Defendants' motion for summary judgment on the FHA claims.

**c.  ADA and Rehabilitation Act Claims**

Plaintiffs bring a disability discrimination claim under Title III of the ADA and § 504 of the Rehabilitation Act against the Defendants. Both the ADA and the Rehabilitation Act prohibit discrimination based on disability.[5] *See Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir.

---

[5] One of the primary differences between the ADA and the Rehabilitation Act is that the Rehabilitation Act only applies to federally-funded programs. *Bryant v. N.Y. Educ. Dep't*, 692 F.3d 202, 216 (2d Cir. 2012) ("To establish a prima facie case under the Rehabilitation Act, a plaintiff must allege . . . that he or she is a person with disabilities . . . who has been denied benefits of or excluded from participating in a *federally funded* program or special service[.]" (emphasis added)).

2008) ("Title III of the ADA prohibits discrimination against individuals 'on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation.'" (quoting 42 U.S.C. § 12182(a));

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (stating that "[a]lthough there are

subtle differences between [the ADA and the Rehabilitation Act] the standards adopted . . . by

[them] are generally the same[.]" (citation omitted)).  Title III[6] and Rehabilitation Act[7] claims

include claims for intentional discrimination, disparate impact, and failure to accommodate.

*Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) ("A qualified individual can base a

discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate

treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'" (quoting

*Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003))).

    Plaintiffs cite to the same factual allegations in the Amended Complaint in support of

their disability claim as they cite to support their FHA claim.  (*See* Am. Compl. ¶¶ 1–10; 47–50.)

Thus, Plaintiffs allege that they were denied "their right to have guest [sic] visit without signing

a log book at the receptionist desk," "not permitted to have the receptionist's electric door

buzzed open," and assaulted, among other allegations.  (*Id.* at ¶ 8.)  They also generally allege

---

[6] "In order to state a claim for violation of Title III, which authorizes private actions only for injunctive relief, not monetary damages, a plaintiff must 'establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA[.]'" *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012) (quoting *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)); *see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (outlining the test for disability discrimination).

[7] "To establish a prima facie case under the Rehabilitation Act, a plaintiff must allege: [1] that he or she is a person with disabilities under the Rehabilitation Act, [2] who has been denied benefits of or excluded from participating in a federally funded program or special service, [3] solely because of his or her disability." *Bryant*, 692 F.3d at 216.

that because of both their national origin and disability, Plaintiffs were denied "full and equal access to society, to the building premises, [and] to the exact lease terms." (Am. Compl. ¶ 49.) To the extent that Plaintiffs' Amended Complaint can be read to allege intentional discrimination or disparate impact, these claims arise out of the same facts as the FHA claims that are barred by the Settlement Agreement. (*See supra* Part II(b).) As discussed above in Part II(b), these factual claims are precluded by the Settlement Agreement, and, therefore, Plaintiffs' disability claim is also precluded by the Settlement Agreement.[8] *Marvel Characters*, 310 F.3d at 287 (holding that a claim is precluded when it arises from "the same transaction or connected series of transactions" at issue in the earlier litigation).

Plaintiffs allege for the first time in their opposition to the summary judgment that in August 2011, they began making requests for reasonable accommodation to have a handicapped rail added to the shower for Plaintiff Nilda Cordona.[9] (Pl. Opp'n App. (part IV) at 1–2.)

---

[8] Even if this claim was not precluded by the Settlement Agreement, Plaintiffs have not alleged, nor can they allege – viewing the facts in the light most favorable to Plaintiffs – that they were directly discriminated against or suffered a disparate impact because of a disability. Plaintiffs submitted a letter from their physician that states they are disabled because of their anxiety disorders. (Pl. Opp'n App. (part III) at 1–2.) Defendant Community Access is a not-for-profit organization "concentrating in the field of supportive housing and peer employment training programs for New Yorkers who live with a psychiatric disability." (Def. 56.1 ¶ 2; *see also* Pl. Opp'n App. (part I) at 2.) Arguably, everyone in their rental complex is similarly situated in that they are all disabled. Plaintiff Nilda Cardona is also in a wheel chair. (Oral Arg. Tr. 7:5–7.) However, other than conclusory statements, there is no allegation that Plaintiff Nilda Cardona was treated differently than other tenants because of her inability to walk. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (alteration and citation omitted)); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (noting that a plaintiff must plead "[f]actual allegations [that] raise a right of relief above the speculative level[.]" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

[9] Both the ADA and the FHA allow for reasonable accommodation claims. *Quad Enterprises Co., LLC v. Town of Southold*, 369 F. App'x 202, 205 (2d Cir. 2010) (summary order) ("Like the [FHA], the ADA requires entities to make reasonable accommodations for the disabled."); *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) ("Both

Defendant Johnson refused to install the bar. (*Id.*) Then on September 14, 2011, Plaintiff Nilda Cordona fell exiting the shower, injured herself and was hospitalized.[10] (*Id.*) The Court need not consider a claim presented for the first time in an opposition to a summary judgment motion and will not do so here.[11] *See Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) (summary order) ("The district court did not err in disregarding allegations [the plaintiff] raised for the first time in response to [the defendant's] summary judgment motion."); *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (summary order) (2d Cir. 2010) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1183, at 23 n.9 (3d ed. 2004))); *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (upholding the district court's denial of the plaintiff's request to amend the complaint in the summary judgment motion as the request was "untimely"); *Levion v. Societe Generale*, 822 F. Supp. 2d 390, 394–99, n.4 (S.D.N.Y. 2011) *aff'd*, No. 11-CV-4476, 2012 WL 5861809 (2d Cir. Nov. 20, 2012) ("Indeed, '[b]ecause a failure

---

[FHA and ADA] require 'that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities.'" (citations omitted)). "To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that: (1) he suffers from a handicap as defined by the [FHA]; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Bentley v. Peace and Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005). Plaintiffs have the burden of showing that "but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Tsombanidis*, 352 F.3d at 578.

[10] Plaintiffs clarified at oral argument that a bar was installed, but they felt that the bar was insufficient. (Oral Arg. Tr. 29:12–24.)

[11] At oral argument, Plaintiff Nilda Cardona informed the Court that she previously hired an attorney and is currently pursuing her reasonable accommodation claim in a separate action. (Oral Arg. Tr. 34:8–34:21.) She stated that she considered her suit for reasonable accommodation to be wholly separate from her claim before this Court. (*Id.*)

14

to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.'" (citations omitted)); *Evans v. Solomon*, 681 F. Supp. 2d 233, 253 (E.D.N.Y. 2010) ("[I]f a complaint does not fairly assert facts supporting a particular cause of action, 'it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion.'" (citations omitted)). Defendants' motion for summary judgment is granted as to Plaintiffs' ADA and Rehabilitation Act claims.

### d.  State Law Claims

#### i.  Invasion of Privacy

Plaintiffs have not stated a claim for invasion of privacy. Plaintiffs allege that they were denied "their right to have guest [sic] visit without signing a log book at the receptionist desk," "not permitted to have the receptionist's electric door buzzed open," and assaulted, among other allegations. (*Id.* at ¶ 8.) New York State only recognizes the tort of invasion of privacy within the confines of Civil Rights Law §§ 50 and 51, which relate to the appropriation of a plaintiff's name or likeness for a defendant's benefit and when the plaintiff's name, portrait, or picture is used for advertising purposes or for trade without the plaintiff's consent.[12] *Matthews v. Malkus*,

---

[12] Plaintiffs also list the Privacy Act of 1974, 5 U.S.C. § 552a as a basis for one of their claims. (Am. Compl. ¶ 1.) This act is inapplicable. The Privacy Act sets limitations on when a record maintained by a federal government agency may be disclosed. *See* 5 U.S.C. § 552a; *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. ---, 131 S. Ct. 746, 753–54 (2011) ("[T]he Government may not disclose records pertaining to an individual without that individual's written consent [under § 552a(b)]."). The Privacy Act only applies to federal government agencies and not to state entities or private individuals. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) ("[T]he private right of civil action created by the Privacy Act is specifically limited to actions against agencies of the United States government."); *Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d Cir. 2005) ("[U]nder the Privacy Act . . . there is no private right of action against an official or employee of a municipal or state, rather than a federal, agency." (internal quotation marks and citations omitted)). Defendants are not federal

377 F. Supp. 2d 350, 359 (S.D.N.Y. 2005) ("New York does not recognize a common-law right to privacy. A limited statutory right of privacy does exist, but only covers the use of one's 'name, portrait, picture, or voice . . . for advertising purposes or for the purposes of trade without the written consent first obtained.'" (citations omitted)); *Farrow v. Allstate Ins. Co.*, 862 N.Y.S.2d 92, 93 (App. Div. 2008) ("New York State does not recognize the common-law tort of invasion of privacy except to the extent it comes within Civil Rights Law §§ 50 and 51. . . . These statutes protect against the appropriation of a plaintiff's name or likeness for a defendant's benefit and create a cause of action in favor of any person whose name, portrait, or picture is used for advertising purposes or for trade without the plaintiff's consent."); *Ram v. Moritt*, 612 N.Y.S.2d 671, 672–73 (App. Div. 1994) ("New York State does not recognize the common-law tort based upon invasion of privacy except to the extent it comes within Civil Rights Law §§ 50 and 51 . . . ."). Plaintiffs do not allege nor have they provided the Court with any facts to suggest that their name, voice, or likeness was used by either defendant for any type of advertising or trade purpose. Defendants' motion for summary judgment is granted as to this claim.

### ii. Intentional Infliction of Emotional Distress

Plaintiffs bring a claim for intentional infliction of emotional distress against Defendants. In addition to citing to the same factual allegations in the Amended Complaint relied on to support their other claims, Plaintiffs generally allege "as a direct result and proximate cause of the acts or inactions by [Defendants] hereto, [Plaintiffs] have [suffered], and will continue to suffer great humiliation, mortification, and indignation, loss of normal activities (work/hobbies), exacerbation of preexisting medical/mental illnesses, day-and nightmare, compelled to pay large sums in medical expenses, forced to defend themselves against fabricated allegations/charges, all

government agencies. In addition, there is no allegation, nor has any evidence been presented, that any records were disclosed.

to the detriment to the plaintiffs."[13]  (Am. Compl. ¶ 26)  Plaintiffs have provided no evidence to support these claims.

To plead a claim for intentional infliction of emotional distress, a plaintiff must plead: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993); *see also Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir. 1995) (outlining test for intentional infliction of emotional distress). "New York courts have been 'very strict' in applying these elements." *Gay*, 60 F.3d at 89 (citing *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985)). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell*, 81 N.Y.2d at 122).  Conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" and is of such a nature that it is "utterly intolerable in a civilized community." *Marmelstein v. Kehillat New Hempstead*, 11 N.Y.3d 15, 22–23 (2008) (citation omitted); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 564 (S.D.N.Y. 2012) (noting that "New York sets a particularly high bar" for intentional infliction of emotional distress cases requiring "conduct that is so 'extreme and outrageous'" (citations omitted)).

A claim for intentional infliction of emotional distress is subject to a one year statute of limitations. *Bernstein v. Vill. of Piermont*, No. 11-CV-3677, 2012 WL 6625231, at *4 (S.D.N.Y. Dec. 20, 2012) ("[I]ntentional infliction of emotional distress . . . [is] subject to a one year statute

---

[13] While Plaintiffs use this same language to support all of their claims, it appears most appropriate for their intentional infliction of emotional distress claim. (*See* Am. Compl. ¶¶ 11, 16, 21, 31, 36, 41, 46, 50.)

of limitations under N.Y. C.P.L.R. § 215(3)."); *Wilson v. Erra*, 942 N.Y.S.2d 127, 129 (App.

Div. 2012) ("[I]ntentional infliction of emotional distress [is] governed by a one-year statute of

limitations.").

In addition to re-alleging that Plaintiffs were treated differently than other tenants,

Plaintiffs make several allegations of specific acts of assault purported to have occurred in

September 2009, April 2010, and May 2010.  (Compl. Ex. A.)  Any claim for intentional

infliction of emotion distress based on these alleged assaults is barred by the statute of

limitations. *See, e.g., Liang v. Cafe Spice SB, Inc.*, No. 09-CV-1306, 2012 WL 5988766, at *21

n.26 (E.D.N.Y. Nov. 29, 2012) ("Though not raised by defendants, the Court notes that

plaintiff's intentional infliction of emotional distress claim is also barred by the one-year statute

of limitations for such a claim.").  Any claims related to Plaintiffs' general allegations that they

were treated differently than other tenants because of their national origin and sexual orientation

would be barred by res judicata because they arise from the same set of facts as the 2009

Litigation and the Settlement Agreement.  (*See supra* Part II(b).)

Lastly, Plaintiffs general allegations that they have suffered "great humiliation,

mortification, and indignation, loss of normal activities (work/hobbies), exacerbation of

preexisting medical/mental illnesses, day-and nightmare" and that they have been "forced to

defend themselves against fabricated allegations/charges, all to the detriment to the plaintiffs"

(Am. Compl. ¶ 26) are not sufficiently outrageous to make out a claim for intentional infliction

of emotional distress. *See, e.g., Stevens v. New York*, 691 F. Supp. 2d 392, 399 (S.D.N.Y. 2009)

("Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile

environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a

claim of [intentional infliction of emotional distress] because the conduct alleged is not

18

sufficiently outrageous." (quoting *Lydeatte v. Bronx Overall Econ. Dev. Corp.*, No. 00-CV-5433, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001))); *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 270 (E.D.N.Y. 2009) (holding that the plaintiff's claims that her requested accommodations were denied and she was subjected to retaliatory eviction proceedings were insufficient to sustain a claim of intentional infliction of emotional distress). Defendants' motion for summary judgment is granted as to Plaintiffs' claims for intentional infliction of emotional distress.

### iii.  Discrimination

Plaintiffs bring a claim for discrimination under Civil Rights Law § 40-c. Plaintiffs cannot sustain a claim because they did not comply with the procedural requirements to bring a claim under Civil Rights Law § 40-c.

Civil Rights Law § 40-c states that "all persons within the jurisdiction of this state shall be entitled to the equal protection of the laws . . . [and] No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state." N.Y. Civ. Rights Law § 40-c. However, in order for § 40-c to apply, a plaintiff must satisfy the requirements of Civil Rights Law § 40-d and provide the Attorney-General with notice at or before the commencement of the action. *Finch v. New York*, No. 10-CV-9691, 2012 WL 2866253, at *11 (S.D.N.Y. May 30, 2012) ("The failure to serve the Attorney General at or before the commencement of an action under Section 40–c is fatal to the plaintiff's claim and requires dismissal of those causes of action."); *Cave v. E. Meadow Union Free Sch. Dist.*, 480 F. Supp. 2d 610, 642 (E.D.N.Y. 2007) ("The failure to serve

19

the Attorney General at or before the commencement of an action under Section 40–c is fatal to the plaintiffs' claim and requires dismissal of those causes of action."); *Sundaram v. Brookhaven Nat. Labs.*, 424 F. Supp. 2d 545, 571 (E.D.N.Y. 2006) ("New York courts have consistently held that notice to the attorney general is an essential prerequisite to actions for violations of section 40-c."); *Chun Suk Bak v. Flynn Meyer Sunnyside, Inc.*, 727 N.Y.S.2d 656 (App. Div. 2001) (affirming lower court's dismissal of the § 40-c claim because "[t]here is no allegation in the complaint that the plaintiff provided notice to the Attorney General at or before the commencement of the action as required by Civil Rights Law § 40-d"). Plaintiffs have not alleged nor have they provided any evidence suggesting that they served the Attorney General. Therefore, Defendants' motion for summary judgment is granted as to Plaintiffs' § 40-c discrimination claim.

### iv. Fraudulent Concealment

Plaintiffs bring a fraudulent concealment claim against Defendants. "To state a claim for fraudulent concealment, a plaintiff must allege: (1) that the defendant had a duty to disclose certain material information but failed to do so; (2) that the defendant then made a material misrepresentation of fact; (3) that said misrepresentation was made intentionally in order to defraud or mislead; (4) that the plaintiff reasonably relied on said misrepresentation; and (5) that the plaintiff suffered damage as a result." *Oxbow Calcining USA Inc. v. Am. Indus. Partners*, 948 N.Y.S.2d 24, 30 (App. Div. 2012); *see also High Tides, LLC v. DeMichele*, 931 N.Y.S.2d 377, 380 (App. Div. 2011) (outlining the elements of fraudulent concealment); *Milestone Shipping, S.A. v. Estech Trading LLC*, 811 F. Supp. 2d 915, 925 (S.D.N.Y. 2011) (same); *Zaccaro v. Shah*, 746 F. Supp. 2d 508, 522 (S.D.N.Y. 2010) (same). Plaintiffs allege no facts which would support a fraudulent concealment claim and Plaintiffs have failed to provide any

20

evidence to support said claim.  Defendants' motion for summary judgment is granted as to Plaintiffs' fraudulent concealment claim.

### v.  Negligence

Plaintiffs also bring a negligence claim against Defendants.  Plaintiffs' allegations are insufficient to support a negligence claim and Plaintiffs have not provided any evidence to support said claim.

"To establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  *Solomon by Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985); *see also Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) ("Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach."); *Jiminez v. Shahid*, 922 N.Y.S.2d 123, 124 (App. Div. 2011) ("The elements of a common-law negligence cause of action are a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting there from."); *Wayburn v. Madison Land Ltd. P'ship*, 724 N.Y.S.2d 34, 37 (App. Div. 2001) ("To make out a prima facie case of negligence, a plaintiff must prove that the defendant owed a duty, breached that duty and that the breach proximately caused the plaintiff's injury.").  "[A] plaintiff must demonstrate the existence of 'facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.'" *J.E. v. Beth Israel Hosp.*, 744 N.Y.S.2d 166, 169 (App. Div. 2002) (quoting *Schneider v. Kings Highway Hosp. Ctr., Inc.*, 67 N.Y.2d 743, 744 (1986).  Plaintiffs have alleged no facts nor have they provided the Court with any evidence of negligence or

21

damages.  Defendants' motion for summary judgment is granted as to Plaintiffs' negligence claim.

### vi. Assault and Battery

Plaintiffs' assault and battery claims are barred by the statute of limitations.  In New York, claims for the intentional torts of assault and battery are governed by a one year statute of limitations.  N.Y. Civ. Prac. L. & R. § 215(3); *see also Ashjari v. Nynex Corp.*, 182 F.3d 898 (2d Cir. 1999) ("Under N.Y. C.P.L.R. § 215(3), claims of assault and battery . . . must be brought within one year from the date the claim accrued."); *Campbell v. City of New York*, No. 09-CV-3306, 2011 WL 6329456, at *4 (E.D.N.Y. Dec. 15, 2011) ("New York law provides a one year statute of limitations."); *Sawyer v. Wight*, 196 F. Supp. 2d 220, 228 (E.D.N.Y. 2002) ("There is a one year statute of limitations for assault and battery claims in New York.").  As an attachment to the first Complaint filed in this action, Plaintiffs included several letters which describe various alleged assaults.[14]  (Compl. Ex. A.)  One letter alleges that Plaintiff Nilda Cardona was assaulted on September 19, 2009.  (*Id.*)  Another letter written to Judge Mann in June of 2010, asserted that Plaintiff Rufino Cardona had been assaulted in April of 2010.  (*Id.*)  Another letter alleges that Plaintiff Rufino Cardona was assaulted in July of 2010.  (*Id.*)  The action was not brought until August of 2011, and thus, all of the alleged assault and batteries are outside of the statute of limitations.  Defendants' motion for summary judgment is granted as to Plaintiffs' assault and battery claims.

---

[14] Plaintiffs failed to include these letters as attachments in their Amended Complaint. Under a liberal reading of the Plaintiffs' Amended Complaint, the Court finds that the letters have been incorporated by reference in the Amended Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (citations omitted)).

### vii. Conspiracy

Plaintiffs bring a conspiracy claim against Defendants. "New York does not recognize an independent tort of conspiracy" and liability can only be available based on the establishment of "an independent underlying tort." *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, No. 10-CV-3789, 2012 WL 3537009, at *17 (E.D.N.Y. Aug. 14, 2012) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006)); *see also Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 560 (E.D.N.Y. 2011) ("New York does not recognize an independent tort of civil conspiracy, such a cause of action is available only if there is evidence of an underlying actionable tort." (quoting *Baker v. R.T. Vanderbilt Co.*, 688 N.Y.S.2d 726, 729 (App. Div. 1999))); *In re Hoge*, 946 N.Y.S.2d 350, 353 (App. Div. 2012) ("New York does not recognize civil conspiracy to commit a tort as an independent cause of action." (citations omitted)). Since Plaintiffs have failed to sustain any underlying tort claims, they cannot sustain a claim for conspiracy. *See Nissan Motor Acceptance Corp. v. Scialpi*, 944 N.Y.S.2d 160, 162 (App. Div. 2012) ("The respondents were entitled to summary judgment dismissing the causes of action to recover damages for conspiracy to commit fraud and conspiracy to commit a tortious act insofar as asserted against them, since a cause of action sounding in civil conspiracy cannot stand alone, but stands or falls with the underlying torts."). The Court grants Defendants' summary judgment motion to dismiss the conspiracy claim.

### e. Plaintiffs' Motion for Sanctions

Plaintiffs allege that Defendants' summary judgment motion is "without merit" and demand financial sanctions. (Pl. Opp'n App. (part I) at 1.) "Rule 11(c) of the Federal Rules of Civil Procedure [ ] allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the

court." *Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 517–18

(S.D.N.Y. 2012) (alteration in original) (quoting *Williamson v. Recovery Ltd. P'ship*, 542 F.3d

43, 51 (2d Cir. 2008)).  As Plaintiffs have failed to sustain any of their underlying claims,

Defendants' summary judgment motion is not frivolous.  Therefore, Plaintiffs' motion for

sanctions is denied.  *See e.g., Curto v. Edmundson,* 392 F.3d 502, 504 (2d Cir. 2004) (*per

curiam*) (holding that the district court did not abuse its discretion in denying the plaintiff's

request for sanctions against the defendant where the district court dismissed plaintiff's claims);

*Stoner v. Young Concert Artists, Inc.*, No. 11-CV-7279, 2012 WL 4471602, at *7–8 (S.D.N.Y.

Sept. 26, 2012) (holding that sanctions were not warranted against the defendant where

plaintiff's claims were dismissed).

**Conclusion**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment

and dismisses the Amended Complaint in its entirety.  The Court also denies Plaintiffs' motion

for sanctions.  The Clerk of the Court is directed to close the case.

SO ORDERED:

/S/ Judge Margo K. Brodie

MARGO K. BRODIE
United States District Judge

Dated: January 25, 2013
       Brooklyn, New York

24